IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TRESA J. STRASSER, | ) Civil No.: 3:11-cv-1432-JE |
| | ) |
|     Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION |
| v. | ) |
| | ) |
| BAC HOME LOAN SERVICING, and, | ) |
| RECONTRUST CORPORATION, | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

    Teresa J. Strasser
    708 East 7th Street
    Molalla, OR 97038

        Plaintiff Pro Se

    Paul J.C. Southwick
    Gregory A. Chaimov
    Blake J. Robinson
    Davis Wright Tremaine LLP
    1300 SW 5th Avenue, Suite 2400
    Portland, OR 97201

        Attorneys for Defendants

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff Teresa Strasser[1] initially brought this foreclosure-related action against BAC Home Loans Servicing, LP ("BAC") and ReconTrust Company, N.A. ("ReconTrust") in Clackamas County Circuit Court.  Defendant Bank of America, N.A. ("BANA"), as successor by merger to BAC, and Defendant ReconTrust subsequently removed the action to this court and now move for summary judgment as to all Plaintiff's claims. Defendants also request that this Court take judicial notice of Exhibits One through Seven attached to the Declaration of Paul Southwick in Support of Defendants' Motion for Summary Judgment

For the reasons discussed below, Defendants' request for judicial notice is granted and Defendants' motion for summary judgment should be granted.

**Background**

In October 1988, Plaintiff acquired a home in Molalla, Oregon (the "Property") through Farm Home.  She has resided at the Property since 1988.  On September 6, 2007, Plaintiff obtained a loan for $137,000 (the "Loan") from Countrywide Bank, FSB to refinance the Property.  Defendant BANA is a successor to Countrywide Bank FSB.  Following the Loan's origination, Federal Home Loan Mortgage Corporation ("Freddie Mac") became the owner of the Loan and Countrywide Home Loans Servicing, LP was appointed the loan servicer.  In April of 2009, Countrywide Home Loans Servicing LP changed its name to BAC Home Loans Servicing, LP.  In July 2011, BAC merged with BANA.  BANA is the successor by merger to BAC.  BANA holds the original promissory note on the Property and services the loan on behalf of Freddie Mac.

---

[1] Ms. Strasser's first name is incorrectly spelled on the Complaint and therefore appears on the docket and in the case caption as "Tresa."

FINDINGS AND RECOMMENDATION – 2

The Loan was secured to the Property by a Deed of Trust identifying Plaintiff as the borrower, Countrywide Bank, FSB as the lender, Pacific Northwest Title as the trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, "solely as a nominee for Lender and Lender's successors and assigns." Southwick Decl. Ex. 1.  MERS subsequently assigned its agency interest in the Deed of Trust to BAC Home Loans Servicing, LP (now BANA) and BANA then appointed ReconTrust as the successor trustee under the Deed of Trust.

From the Loan's inception through August 2009, Plaintiff made regular, on-time payments.[2]  Between September 2009 and January 2010, Plaintiff submitted regular payments that, according to the history, were processed after the due date.  During her deposition, Plaintiff testified that she didn't recall making a late payment but couldn't know if the payments were then processed after the due date.  Plaintiff's payments in November and December 2009 and January 2010 included payments towards late fees charged on the loan.  Plaintiff then missed her February 2010 payment.  A payment of $1200.00 is recorded in a transaction dated March 15, 2010, which was applied to the February payment month, late fees and an "Unapplied Total" account.  A regular payment dated March 29, 2010 was applied to the March 2010 payment month.  Plaintiff made a regular but late-posted payment in April 2010.  No payment was made in May 2010.

On June 18, 2010 a payment for $1000.00 was posted and deposited in the Unapplied Total account, bringing the balance of that account to $1050.23.  That balance was then applied on June 21, 2010 to Plaintiff's May 2010 payment month.  On July 26, 2010, a payment for $900.00 was posted and deposited in the Unapplied Total account.  On August 3, 2010, a total of

---

[2] The payment history for the loan is contained in Ex. 2 to the BANA's Declaration.  The same history, although not as extensive, also appears as an attachment to Plaintiff's Complaint and as Ex. 11 in support of Plaintiff's Response.

FINDINGS AND RECOMMENDATION – 3

$99.54 was withdrawn from the Unapplied Total account. Of that amount, $14.06 was credited to Plaintiff's Escrow account and $85.48 was applied to late charges.

On October 29, 2010, a payment for $1000.00 posted and was deposited in the Unapplied Total account, bringing that balance to $1800.46. In a transaction dated November 5, 2010, $1,064.29 was withdrawn from the Unapplied Total account and posted as a regular payment towards the June 2010 payment month. On November 18, 2010, a Hazard Insurance payment posted for $732.00. As of November 18, 2010, Plaintiff's Escrow account balance was -$931.56, there were a total of $42.74 in late fees, the Unapplied Total balance was $736.17 and her payments were only current through June 2010. Plaintiff testified and the record reflects that Plaintiff made a December 2010 payment of $1000 but that BANA returned the payment to her explaining that it was "necessary to return these funds to you [because] [t]he amount remitted does not represent the total due." Strasser Depo. 56;15-58:3; Complaint Ex. 9. There are no additional entries in the payment history until August 31, 2011. On that date, a transaction posted withdrawing the total balance of $736.17 from the Unapplied Total account. That sum was returned to Plaintiff with a notice indicating that the funds were being returned because "the partial payments on your account are not sufficient to satisfy the full delinquency due on your loan" and additional amounts equal to the full amount due had not been received. Complaint Ex. 8.

Plaintiff has attached as Exhibits to her Complaint, Notices of Intent to Accelerate dated dated June 16, 2010 and November 8, 2010. The Notices explain that the loan is "in serious default because the required payments have not been made" and indicate the amounts required to reinstate the loan. The June Notice shows Plaintiff owing monthly charges since May 2010. The November Notice shows Plaintiff owing monthly charges since July 2010. The November

FINDINGS AND RECOMMENDATION – 4

Notice explains that "[t]o cure the default, on or before December 8, 2010, BAC Home Loans Servicing, LP must receive the amount of $4858.98 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before December 8, 2010." Complaint Ex. 2.  The Notice also explains that "if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured." Id.

On April 28, 2011, ReconTrust began foreclosure proceedings due to the uncured default and recorded a Notice of Default and Election to Sell, scheduling sale of the Property for August 29, 2011.  The Notice of Default and Election to Sell was served on Plaintiff personally and by mail in May 2011.  Plaintiff testified that she didn't recall receiving the Notice but that it was "possible" that she received it.

In a Notice dated August 15, 2011, BANA supplied Plaintiff with a Reinstatement Calculation explaining that their records showed that the Loan was in foreclosure and providing instructions for how to reinstate the Loan.  Complaint Ex. 3.  The Notice explained that the calculation was "good through" August 23, 2011 and instructed Plaintiff that in order to reinstate the Loan, she must submit certified funds or a money order in the amount of $15,767.27 to BANA with "a sufficient time before the foreclosure sale to allow your funds to be matched up with this loan."

The Reinstatement Calculation specifically instructed that:

* * * Funds MUST reference the BANK OF AMERICA, N.A. LOAN NUMBER, PROPERTY ADDRESS, and CUSTOMER NAME.  You MUST include all this information so that we can properly identify these funds and post them to your account. . . . If we cannot identify the funds as belonging to you and this loan, they will be returned to the bank or entity that issued the funds and they will NOT be applied to this loan.

FINDINGS AND RECOMMENDATION – 5

Complaint Ex. 3, pg. 2.

On August 17, 2011, Plaintiff sent a cashier's check for $17,000 by US Postal Service Express Mail to the address indicated on the Reinstatement Calculation. Complaint Exs. 5, 6. The package was signed for and, according to the Postal Service's Track and Confirm report, was delivered on August 18, 2011.

The check Plaintiff mailed did not contain the loan number or the property address and Plaintiff's name was misspelled on the check as "Teresa Stasser." Although the loan number appears on the copy of the cashier's check submitted with Plaintiff's Complaint, Plaintiff testified at her deposition that she hand wrote the loan number on a copy of the check she was faxing to BANA after the original, without the loan number included, had been mailed. Strasser Depo. 100:8-15.

According to notes submitted by Plaintiff of her communications with BANA, she called on August 18 and 19 and on September 1, 2011 to confirm that the check had been received and applied to her account. Ex. 6 to Plaintiff's Response. Plaintiff was allegedly told that her check had not been processed. Id. According to Plaintiff's notes, during the September 1st phone conversation, Plaintiff was told to fax a copy of the check. Plaintiff alleges that her fax ultimately went through on September 3, 2011. During a phone conversation on September 6, 2011, Plaintiff was informed that the check had not been located and that the copy she had faxed did not include a check number and contained an incorrect spelling of her name, which could have resulted in difficulty applying the check to her loan. BANA Decl. ¶ 16. According to Plaintiff, when she contacted US Bank, the issuer of the cashier's check, in order to stop payment and have the check reissued, she was told that bank policy required a 90-day waiting period for stop payments on checks of "that amount."

FINDINGS AND RECOMMENDATION – 6

According to BANA's Declaration, the check submitted by Plaintiff was not located. Plaintiff testified at her deposition that after waiting 90 days she received the $17,000 back but that she had to place and pay for a stop payment on her check. Strasser Depo. 96:10-19.

At some point the trustee's sale of Plaintiff's Property was postponed and it is unclear from the record what notice, if any, Plaintiff received of the postponement. The sale ultimately went forward on October 7, 2011 and the Property was sold at public auction to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). The trustee's sale of the Property was finalized with the October 27, 2011 recording of the Trustee's Deed to Freddie Mac. Southwick Decl. Ex. 6.

Plaintiff filed her Complaint in Clackamas County Circuit Court on October 27, 2011. As noted above, Defendants removed the action to this court on November 28, 2011. On September 7, 2012, BANA and Freddie Mac voluntarily rescinded the foreclosure and restored the subject Deed of Trust by recording a withdrawal of the Trustee's Deed. Southwick Decl. Ex. 7.[3] The payment history for the Loan shows no payments were made on the Loan between November 5, 2011 and March 4, 2013. At oral argument, counsel for Defendants represented that there are no current eviction proceedings although there is a continuing debt on the property. Plaintiff is currently residing in the property but stated during oral argument that she is not making payments on the mortgage.

---

[3] During oral argument, the Court discovered that the document in the record as Exhibit 7 had apparently been recorded in Jackson County, Oregon not Clackamas County where the property is located. The Court advised counsel for Defendant that because it had been represented to the Court that the Trustee's Deed had been withdrawn (implying that it had been properly withdrawn), the Court expects the Defendant to take whatever action was necessary to have the Clackamas County deed records properly reflect the status of the legal title to the property in question.

FINDINGS AND RECOMMENDATION – 7

**Claims**

Plaintiff brings two claims.

Plaintiff's First Claim for relief advances three separate claims against Defendants: 1) Breach of Contract, 2) Misrepresentation and 3) Unfair Trade Practices. Plaintiff alleges that BANA and ReconTrust knowingly engaged in deceptive practices in relation to the management of her mortgage and the foreclosure of her Property.

Plaintiff's Second Claim alleges that ReconTrust breached its fiduciary duty to Plaintiff by moving the date of the foreclosure sale without notifying Plaintiff and proceeding with the foreclosure.

Plaintiff seeks damages for her breach of contract and breach of fiduciary duty claims, restraint of the foreclosure sale, punitive damages and fees and costs.

**Evaluating Motions for Summary Judgment**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the

FINDINGS AND RECOMMENDATION – 8

moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## Discussion

### I. Request for Judicial Notice

As a preliminary matter, Defendants have requested that this Court take judicial notice of Exhibits One through Seven attached to the Declaration of Paul Southwick in Support of Defendants' Motion for Summary Judgment. These exhibits are copies of the Deed of Trust securing the $137,000 loan extended to Plaintiff (Ex. 1); the Assignment of Deed of Trust relating to the Deed of Trust (Ex. 2); the Appointment of Successor Trustee relating to the Deed of Trust (Ex. 3); The Notice of Default and Election to Sell relating to the Deed of Trust and Property (Ex. 4); the Notice of Trustee's Sale and Affidavits of Mailing and posting relating to the trustee's sale of the Property (Ex. 5); the Trustee's Deed prepared relative to the trustee's sale of the Property relative to the Notice of Default and Election to Sell (Ex. 6); the Correction of Errors and Withdrawal Deed rescinding the trustee's sale of the Property and resulting Trustee's Deed (Ex. 7).[4]

Plaintiff does not dispute the authenticity or accuracy of these documents. Therefore, the court takes judicial notice of these exhibits in considering the pending motion. *See* Fed.R.Evid. 201(b) (court may take judicial notice of fact that is generally known within the court's territorial

---

[4] See Footnote 3, supra.

FINDINGS AND RECOMMENDATION – 9

jurisdiction and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

## II. Defendants' Motion for Summary Judgment

### A. Claims for Breach of Contract, Misrepresentation and Unfair Trade Practices

As noted above, Plaintiff's First Claim for Relief asserts claims for breach of contract, misrepresentation and "unfair and deceptive practices." Plaintiff alleges that Defendants engaged in "deceptive practices," misapplied Plaintiff's mortgage payments, lost Plaintiff's $17,000 reinstatement check and then foreclosed on Plaintiff's Property. Plaintiff further alleges "lender interference, negligent loan management . . . and violation of the Oregon Consumer Protection Act."

Defendants move for summary judgment, contending that Plaintiff's First Claim cannot be sustained under any theory Plaintiff presents and that there are no genuine issues of material fact that would preclude summary judgment in Defendants' favor. Defendants argue that the record supports only the conclusion that BANA appropriately applied Plaintiff's payments and that any failure by BANA to apply the Reinstatement funds was caused by Plaintiff's failure to follow the explicit and mandatory requirements for submitting the funds to BANA.

1. Breach of Contract

Plaintiff's breach of contract claim appears to rely on her allegations that BANA violated the Loan agreement by applying her payments and partial payments to late fees and by applying multiple payments to the same month. This, Plaintiff alleges, caused BANA to consider her further behind in her payments than she was and led to the foreclosure.

Defendants argue that Plaintiff cannot establish a claim for breach of contract because she fails to identify a provision of the Loan agreement that has been breached by Defendants and

cannot show that she fully performed her obligations under the Loan.  Defendants assert that Plaintiff's payments were not misapplied and that the Deed of Trust authorized BANA to apply Plaintiff's payments and partial payments in the manner in which it did.   Defendants further argue that Plaintiff's claim is based on her misunderstanding that she could make payments of only principal and interest without submitting funds sufficient to cover escrow expenses and that Plaintiff has not and cannot produce evidence that she made all payments due under the Loan when they were due.

Under Oregon law, a plaintiff seeking to prevail on a breach of contract claim must "'plead and prove [her] own substantial performance'" of the contract's terms.  Iron Horse Eng'g Co., Inc. v. Northwest Rubber Extruders, Inc., 193 Or.App. 402, 416, 89 P.3d 1249 (2004) (quoting Wasserburger v. American Sci. Chem., 267 Or. 77, 82, 514 P.2d 1097 (1973)). Here, based upon the evidence of record before the court, a reasonable trier of fact could not conclude that Plaintiff substantially performed her contractual obligations under the Loan.

The Deed of Trust clearly spells out both Plaintiff's and BANA's obligations.  It requires Plaintiff to make payments sufficient to cover escrow items owed relative to the Loan and Property, including taxes and insurance premiums. Southwick Decl. Ex. 1, §3.  It provides that Loan payments will be applied in the following priority: (a) interest (b) principal, (c) escrow items, with any remaining amounts to be applied first to any late charges due. Id. at §2.  The Deed of Trust also sets out that "Lender is not obligated to apply [partial payments] at the time such payments are accepted . . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower." Id. at §1.

The Loan's payment history and Plaintiff's own deposition testimony show that, beginning in 2009, Plaintiff's payments on the Loan were processed after the due date and multiple payments made were insufficient to cover the full monthly payments due such that, as of November 2010, Plaintiff's Loan payments were current only through June 2010. The payment history, which Plaintiff does not dispute, also reflects that the last payment received from Plaintiff was dated October 29, 2010 and the last regular payment on the Loan, which was made from accumulated funds in the Unapplied Total Account, was made on November 5, 2010 and applied to the June 2010 payment due.

As noted above, Plaintiff attempted to make a December 2010 payment of $1000. However, BANA returned the payment to her stating that it was necessary to return the funds because the amount remitted did not represent the total due. On August 31, 2011, the total balance of $736.17 of the Unapplied Total account was withdrawn. That sum was returned to Plaintiff with a notice indicating that the funds were being returned because "the partial payments on your account are not sufficient to satisfy the full delinquency due on your loan" and additional amounts equal to the full amount due had not been received.

The record supports only the conclusion that Plaintiff failed to make all payments due under the Loan and that BANA either applied or returned Plaintiff's partial payments in a manner consistent with the terms of the Deed of Trust. Plaintiff's default under the Loan terms and her subsequent failure to cure the default prior to the foreclosure sale are fatal to her breach of contract claim. Accordingly, Defendants' motion for summary judgment as to this claim should be granted.

2. Misrepresentation

Plaintiff's claim for misrepresentation, or fraud, appears to rely on her allegations that BANA misrepresented facts regarding application of her payments and the status of her Reinstatement payment.

Defendants assert that Plaintiff has offered no evidence that Plaintiff submitted her Reinstatement check properly and cannot produce evidence that BANA intentionally misrepresented facts in order to harm Plaintiff or that Plaintiff was, indeed, harmed by BANA's conduct.

To establish a claim of fraud, a party must establish: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; (9) and [the hearer's] consequent and proximate injury." Wieber v. FedEx Ground Package System, Inc., 231 Or. App. 469, 480, 220 P.3d 68 (2009). The mere nonperformance of a promise does not constitute fraud, or provide evidence of fraud. Estate of Schwarz v. Phillip Morris, Inc., 206 Or. App. 20, 39, 135 P.3d 409 (2006). Instead, in addition to showing that the speaker failed to perform, a party seeking to establish fraud must produce evidence that the speaker did not intend to perform the promise when the promise was made. Id.

The elements of a fraud claim must be established by clear and convincing evidence. See, e.g., Wieber, 231 Or.App. at 480. Accordingly, the court must apply this standard when evaluating a motion for summary judgment on a fraud claim. See Araujo v. Gen. Elec. Info. Servs., 82 F.Supp.2d 1161, 1170 (D. Or. 2000) (in evaluating motions for summary judgment,

court must consider the evidentiary standard of proof that would apply at trial)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986).

The record contains evidence that Plaintiff received Notices of Intent to Accelerate in June and November of 2010 indicating the amounts necessary to cure the default and that BANA provided Plaintiff with a Loan history in October 2011 detailing the transactions on her account. In addition, the evidence of record shows that BANA provided Plaintiff with a written Reinstatement Calculation notice that included specific, mandatory instructions regarding how to submit a reinstatement payment.  Plaintiff failed to follow those instructions when she mailed the $17,000 cashier's check.  In subsequent phone conversations between Plaintiff and BANA, Plaintiff was informed that the check could not be located.  After Plaintiff faxed a copy of the check, she was told that the absence of the required information on the check could have resulted in difficulty matching it to her loan.  Even granting Plaintiff all inferences, the evidence of record is insufficient to support a claim for fraud.

Under these circumstances, there is an absence of any genuine issue of material fact and Plaintiff's claim for misrepresentation fails as a matter of law.  Accordingly, Defendants' motion for summary judgment as to this claim should be granted.

3. Unfair Trade Practices

Plaintiff alleges that Defendants violated the "Oregon Consumer Protection Act." Defendants assume, as will this Court, that Plaintiff's allegations actually refer to Oregon's Unfair Trade Practices Act, ORS 646.605, et seq. ("UTPA").  The Oregon UTPA allows a private cause of action in circumstances when a person "suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608."  Plaintiff does not allege any

specific violation enumerated in ORS § 646.608.  However, a liberal reading of the Complaint suggests that her allegations of "unfair and deceptive practices" would fall under ORS § 646.608(1)(u). That section provides that a person who "[e]ngages in any other unfair or deceptive conduct in trade or commerce," has engaged in an unlawful practice under the Oregon UTPA. Furthermore, Oregon Administrative Rule 137–020–0805(6) provides that any mortgage loan servicer engages in unfair or deceptive conduct in trade or commerce if it "fails to deal with a borrower in good faith."  Oregon Administrative Rule 137–020–0800(2) defines "good faith" as "honesty in fact and the observance of reasonable standards of fair dealing."

Defendants correctly argue that the UTPA imposes a causation requirement.  Paul v. Providence Health Sys. – Oregon, 237 Or. App. 584, 600-602, 240 P.3d 1110 (2010). Defendants assert that Plaintiff is unable to provide evidence supporting this requirement because it was Plaintiff's conduct, not that of Defendants, which led to the failure to reinstate the loan and the foreclosure sale of Plaintiff's Property.

I agree.  As noted above, the record supports only the conclusion that Plaintiff failed to make adequate and timely mortgage payments, which resulted in her defaulting on the Loan. Plaintiff was given an opportunity to cure the default.  However, Plaintiff failed to follow the specific written instructions provided in the Reinstatement Calculation and submitted a cure check that failed to provide the Loan number, the Property address or her correctly spelled name. Under these circumstances, Plaintiff has not provided evidence sufficient to create the causal link between any alleged ascertainable loss and Defendants' conduct or to create any genuine issue of material fact that would preclude summary judgment on her unfair trade practices claim. Accordingly, Defendants' motion for summary judgment as to this claim should be granted.

B. **Breach of Fiduciary Duty Claim**

Plaintiff alleges that ReconTrust, as the trustee in a non-judicial foreclosure sale, owed Plaintiff, as mortgagor, a fiduciary duty and was required to "take reasonable and appropriate steps to avoid loss of Plaintiff's property." Complaint at 4.1. Plaintiff further alleges that ReconTrust "is a fiduciary to both the mortgagor and the mortgagee and must act impartially and equally to the interest of the debtor and creditor alike." Complaint at 4.1. Plaintiff alleges that ReconTrust breached its duty by continuing with the foreclosure. Id.

To avoid summary judgment on a claim for breach of fiduciary duty under Oregon law, a plaintiff must plead and prove "(1) the existence of a fiduciary relationship, (2) breach of a fiduciary duty, and (3) that the 'breach caused an identifiable loss or resulted in injury.'" In re Smith–Canfield, 2011 WL 1883833, at *8 (Bankr.D.Or. May 17, 2011) (quoting Pereira v. Thompson, 230 Or.App. 640, 654, 217 P.3d 236 (2009)). A fiduciary duty exists when the parties are in a "special relationship" such that "the party who owes at duty of care is acting, 'at least in part, * * * to further the economic interests of the 'client,' the person owed the duty of care.'" Conway v. Pac. Univ., 324 Or. 231, 240, 924 P.2d 818 (1996) (quoting Onita Pacific Corp. v. Trustees of Bronson, 315 Or. 149, 161, 843 P.2d 890 (1992)) (alteration in original).

Defendant argues that Plaintiff's claim fails in the face of both common law and the express language of the Oregon Trust Deed Act, ORS §86.713(7),[5] which provides that

> The trustee or successor trustee does not have a fiduciary duty or fiduciary obligation to the grantor or other persons that have an interest in the property subject to the trust deed . . . .

The statutory language is clear that a trustee such as ReconTrust does not have a fiduciary duty to a trust deed grantor such as Plaintiff. The record contains no other basis for a

---

[5] ORS § 86.713 was previously § 86.790 before being renumbered in 2013 by the Legislative Counsel.

special relationship between Plaintiff and Defendant ReconTrust capable of supporting Plaintiff's claim for breach of fiduciary duty. Accordingly, Plaintiff's claim fails and Defendants' motion for summary judgment as to this claim should be granted.

C. **HAMP Allegations**

In her Response, Plaintiff, for the first time contends that BANA wrongfully denied her applications for loan modifications under the Home Affordable Modification Program ("HAMP") and failed to offer her other restructuring options. Defendants argue that raising this issue for the first time in her Response is an impermissible attempt by Plaintiff to amend her Complaint and that these new allegations should not be considered by the Court. Defendants argue that, if the Court does consider these new allegations, Plaintiff's claim fails in any event because HAMP does not create a private right of action and Plaintiff cannot present evidence that she could have qualified for a loan modification.

Because Plaintiff's loan modification related claims were not raised in her Complaint, I decline to consider these new allegations. See, e.g., Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir.2008) (where allegations are not in the complaint, "raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); Pickern v. Pier I Imports (U.S.), Inc., 457 F.3d 963, 968–69 (9th Cir.2006) (new issues raised in response to summary judgment were not appropriate for consideration).

## Conclusion

For the reasons discussed above, Defendants' request that the Court take judicial notice of the Exhibits One through Seven attached to the Declaration of Paul Southwick (# 47) is GRANTED and Defendants' Motion for Summary Judgment (# 44) should be GRANTED.

## **Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due November 21, 2014. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 4th day of November, 2014.

                                                           /s/ John Jelderks
                                                       John Jelderks
                                                       U.S. Magistrate Judge